UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
    JOHN BALTHROP                         )    Case No. 05-11000-SSM
    MARION G. BALTHROP                    )    Chapter 13
                                          )
        Debtors                           )

**MEMORANDUM OPINION**

This matter is before the court on the objection of Gerald M. O'Donnell, standing chapter 13 trustee, to confirmation of the debtors' plan dated July 11, 2005, and filed on August 8, 2005. The sole remaining ground of objection is that the plan fails to pay joint creditors of the husband and wife at least as much as they would receive in a chapter 7 liquidation.[1] The trustee's objection has been joined by the University of Virginia Medical Center and by the Rector and Visitors of the University of Virginia (collectively, "U.Va.") who assert they are hold joint claims that would be paid in full in a chapter 7 liquidation but will receive only 8 cents on the dollar under the debtors' plan. The issues that must be resolved are whether U.Va.'s claims arise from "emergency medical care" or — even if they do not — whether they would nevertheless be entitled to full payment in a chapter 7 liquidation out of the debtor's residence held as tenants by the entireties. For the reasons

---

[1] As filed, the objection also asserted that the plan failed to comply with the requirement of § 1325(a)(6) that debtors "will be able to make all payments under the plan and to comply with the plan." Since the debtors have now made all the payments required by the plan, this ground is effectively mooted.

1

stated, the court answers both questions in the negative, and will enter an order overruling the objection and confirming the debtors' plan.

### Background

John Balthrop and Marion G. Balthrop (collectively, "the debtors") are husband and wife and are living together. They filed a joint voluntary petition in this court on March 23, 2005, for an adjustment of their debts under chapter 13 of the Bankruptcy Code. On their schedules, they listed $282,670 in assets and $203,698 in liabilities. Among the assets was a house in Manassas, Virginia, valued at $210,000 that they held as tenants by the entireties, subject to a deed of trust having a balance of $43,500.[2] On their schedules, Mr. and Ms. Balthrop each claimed $83,249.73 of equity in the property as exempt, he under § 65.1-82, Code of Virginia,[3] she under § 522(b)(2)(B), Bankruptcy Code. The debtors' schedules reflected combined monthly income in the amount of $3,800,[4] and monthly living expenses of $2,852.

The first plan filed by the debtors was denied confirmation. The modified plan before the court proposes payment to the trustee of three payments of $950 per month followed by three payments of $200 per month plus $12,500 from the sale of their residence,

---

[2] The debtors testified that they purchased the house in 1984 for $49,000.

[3] The cited provision of the Code of Virginia was repealed, effective October 1, 1999. The corresponding section under the current Code of Virginia is § 65.2-531, which exempts workers' compensation benefits from all creditor claims except for spousal or child support. Exactly how this exemption would apply to Mr. Balthrop's interest in the real estate was not addressed at the hearing and is not otherwise apparent from the record. However, since all parties at the hearing treated the exemption as though claimed under § 522(b)(2)(B), Bankruptcy Code, the court will do likewise.

[4] Of this amount, $1,460 per month consisted of workers' compensation payments that were scheduled to terminate in June 2005.

for total plan funding of $15,950.  From the funds received, the trustee would first pay his own commission , with the balance of the funds being paid pro rata to creditors holding unsecured claims, for an estimated dividend of 8 cents on the dollar.

While the objection to confirmation was pending, the debtors obtained a sales contract for the property in the amount of $267,500, which this court approved by order entered on October 28, 2005.  The order required, however, that $74,780 be paid over to the trustee from the sales proceeds pending a ruling by this court on the objection to confirmation.[5]

The claims bar date has now passed.  A total of $74,856.93 in unsecured claims have been filed.  U.Va. has filed two claims (Claims No. 3 and 4) in the aggregate amount of $63,130.68 for medical care provided to Ms. Balthrop.  U.Va. asserts these claims are joint liabilities of the debtors under either of two Virginia statutes, one expressly making each spouse jointly and severally liable for emergency medical care provided to the other spouse, and the second preserving the common-law "doctrine of necessaries."

Ms. Balthrop testified that the charges in question were incurred after she was diagnosed with cancer.  She had been referred by her family doctor to a specialist, Dr. Ng, who saw her on March 1, 2004, and confirmed that she had cancer.  He then arranged for her to be seen at the University of Virginia Medical Center.  She received a letter from the Medical Center dated March 8th confirming an appointment for March 17th.  She was seen on that date by a Dr. Anderson, who scheduled another appointment for two weeks later for

---

[5]  The remaining proceeds of sale, in the approximate amount of $125,000, were paid to the debtors.

a CT scan and blood work. Surgery was then initially scheduled for April 12th but was postponed to April 26th because Ms. Balthrop had a heart murmur. When she came to the hospital, she did not check in through the emergency room but through the outpatient entrance. She was in the hospital three days and was released on April 29th. She returned five weeks later for a check-up, following which she underwent a course of eight to ten chemotherapy sessions beginning in July 2004.

## Discussion

### I.

The sole ground of objection before the court is that the plan fails to pay joint creditors such as U.Va. as much as they would receive in a chapter 7 liquidation. In this connection, a chapter 13 plan must provide that:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

§ 1325(a)(4), Bankruptcy Code. This requirement — that unsecured creditors receive payments having a present value at least equal to what they would receive if the debtor's estate were liquidated under chapter 7 — is commonly referred to as the liquidation test or best interest of creditors test.

### A.

Under § 541(a) of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate comprised "of all of the following property, wherever located and by whomever held: (1) ... all legal or equitable interests of the debtor in property as of the

4

commencement of the case." This includes a debtor's interest in property held as tenants by the entireties. *Greenblatt v. Ford,* 638 F.2d 14 (4th Cir. 1981). However, a debtor may exempt — and thus hold free from the claims of most creditors — certain property. Relevant to the present dispute, this includes an interest in property held as tenants by the entirety "to the extent such property is exempt from process" under state law. § 522(b)(2)(B), Bankruptcy Code.[6] Under Virginia law, real estate held as tenants by the entireties is not liable for the debts of either spouse alone but can only be reached for their joint debts. *Vasilon v. Vasilon*, 192 Va. 735, 66 S.E.2d 599 (1951). The exemption extends also to the proceeds of sale of such property. *Oliver v. Givens*, 204 Va. 123, 129 S.E.2d 661 (1963). Additionally, the exemption is preserved even if the spouses file a joint bankruptcy petition. *In re Bunker*, 312 F.3d 145 (4th Cir. 2002). Accordingly, although a chapter 7 trustee may administer tenancy by the entireties property, he or she may do so only for the benefit of creditors holding joint claims against husband and wife. *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985); *Williams v. Peyton (In re Williams)*, 104 F.3d 688 (4th Cir. 1997).

B.

U.Va. does not assert that Mr. Balthrop has ever agreed to be liable for the medical care that U.Va. provided to Ms. Balthrop. U.Va. does point, however, to two Virginia statutes that potentially make him liable for such care. The first, Section 55-37 of the Code of Virginia, provides as follows:

> Except as otherwise provided in this section, a spouse shall not be responsible for the other spouse's contract or tort liability to

---

[6] The section numbering has been amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8 (April 20, 2005) and is now § 522(b)(3)(B).

> a third party, whether such liability arose before or after the marriage.  The doctrine of necessaries as it existed at common law shall apply equally to both spouses, except where they are permanently living separate and apart, but shall in no event create any liability between such spouses as to each other.  No lien arising out of a judgment under this section shall attach to the judgment debtors' principal residence held by them as tenants by the entireties.

The second statute, Section 8.01-220.2 of the Code of Virginia, provides as follows:

> On and after July 1, 1984, each spouse shall be jointly and severally liable for all emergency medical care furnished to the other spouse by a physician licensed to practice medicine in the Commonwealth, or by a hospital located in the Commonwealth, including all follow-up inpatient care provided during the initial emergency admission to any such hospital, which is furnished while the spouses are living together.  For the purposes of this section, emergency medical care shall mean any care the attending physician or other health care professional deems necessary to preserve the patient's life or health and which, if not rendered timely, can be reasonably anticipated to adversely affect the patient's recovery or imperil his life or health.

The debtors concede the medical treatment U.Va. provided to Ms. Balthrop was "necessary," but they deny that it was "emergency" care within the meaning of Section 8.01-220.2.  Although they do concede that Mr. Balthrop would be liable under Section 55-37 for even non-emergency medical care, they point out that the statute expressly exempts the marital residence from process to enforce the debt.  As a result, they contend, a chapter 7 trustee would not be able to administer the debtors' principal residence held as tenants by the entireties in order to pay U.Va.'s claims.

II.

The court will first address whether the treatment for which U.Va. remains unpaid constitutes "emergency" medical care.  As noted, the statute defines "emergency medical

care" as "any care the attending physician or other health care professional deems necessary to preserve the patient's life or health and which, if not rendered timely, can be reasonably anticipated to adversely affect the patient's recovery or imperil his life or health." The debtors do not deny that the care was "necessary" to preserve Ms. Balthrop's life or health. The point of dispute, rather, is what the statutory phrase "if not rendered timely" means. U.Va. takes the position that "timely" does not necessarily mean "immediately" or "at this moment" but could apply to any treatment that if unduly delayed — whether delay is measured in minutes or months — could diminish the likelihood of recovery or imperil the patient's life or health. The court concludes, however, that "timely" must be understood in the context of the ordinary meaning of "emergency" — that is, "an unforseen combination of circumstances or the resulting state that calls for *immediate* action" or "an *urgent* need for assistance or relief." Webster's Ninth New Collegiate Dictionary 407 (Merriam-Webster, Inc. 1985) (emphasis added). Whatever the outside limits of "timely," the court simply cannot find that the General Assembly intended the phrase to apply to surgery (even essential surgery) scheduled for 26 days in the future. *See Sentara Virginia Beach Gen'l Hosp. v. LeBeau,* 188 F.Supp.2d (E.D. Va. 2002) (Smith, J.).

The facts in the present case are strikingly similar to those in *LeBeau*. The patient in that case had undergone several weeks of chemotherapy and radiation treatment for lung cancer. Following the chemotherapy, he was admitted to the hospital for a scheduled diagnostic out-patient CT scan. Based on the results of the scan, he was scheduled for surgery 16 days later to have the lung removed. He remained in the hospital until his death 41days later. When the $241,193 bill was not paid, the hospital sued the patient's wife and

the patient's estate under both Section 8.01-220.2 and Section 55-37. On summary judgment, the district court addressed only Section 8.01-220.2. The court held that the words of the statute had to be given their plain meaning and ruled that the treatment provided to Mr. LeBeau did not constitute "emergency medical care" because there was no "emergency admission" and no showing that the care "had to be performed precisely at that time and on that date." In the present case, there was likewise no "emergency admission," and no showing by U.Va. that the CT scan and the surgery had to be performed on Ms. Balthrop "at that time and on that date." Accordingly, the court concludes that U.Va. has no claim against Mr. Balthrop under Section 8.01-220.2.

III.

As noted, there is a second Virginia statute, Section 55-47, that preserves the common-law "doctrine of necessaries." The debtors concede that Mr. Baltrop is liable under the doctrine of necessaries for the medical care U.Va. provided to Ms. Balthrop. *See Floyd v. Miller*, 190 Va. 303, 306, 57 S.E.2d 114, 115 (1950) ("Hospital and medical services for one's wife were necessaries at common law for which a husband was liable and that such is still true is not open to question.").[7] However, they point out that the statute expressly provides that "[n]o lien arising out of a judgment under this section shall attach to the judgment debtors' principal residence held by them as tenants by the entireties." U.Va. does not dispute that if Mr. Balthrop's liability arises solely under Section 55-47, U.Va. would be

---

[7] The statute as then written was later held unconstitutional in *Schilling v. Bedford Co. Mem. Hosp., Inc.*, 225 Va. 539, 303 S.E.2d 905 (1983) because it imposed liability on a husband for necessaries furnished his wife but not the converse. The statute was subsequently amended to its present form to make it gender-neutral.

8

unable to bring a judgment creditor's suit under state law to enforce a sale of the residence to satisfy any judgment it might obtain against Mr. and Ms. Balthrop.  However, it says that it has a right under the Fourth Circuit's holding in *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985)*,* to have its joint claim paid from the sales proceeds without regard to its ability outside of bankruptcy to obtain a lien against the residence.  With this proposition, the court cannot agree.

*Sumy* cannot be read as creating an unrestricted right to pay joint claims from tenancy by the entireties property.  Rather, *Sumy* must be read in the context of the specific evil it sought to address.  Prior to the decision in *Sumy*, it was not uncommon, where spouses with joint debts owned property as tenants by the entireties, for only one spouse to file bankruptcy.  If that spouse were to receive a discharge, then the formerly-joint creditor would have a legally-enforceable claim only against the non-filing spouse, and would thereby be deprived of the right to reach the tenancy by the entireties property.  To prevent such an abuse, which it characterized as a "legal fraud," the Fourth Circuit has long allowed a joint creditor, where only one spouse has filed for bankruptcy, to seek relief from the automatic stay and a stay of the debtor's discharge in order to go into state court and obtain a judgment that could be enforced against the tenancy by the entireties property.  *Phillips v. Krakauer*, 46 F.2d 764 (4th Cir. 1931) (decided under former Bankruptcy Act); *Chippenham Hospital, Inc. v. Bondurant*, 716 F.2d 1057 (4th Cir. 1983) (same result under Bankruptcy Code).

In *Sumy*, the Fourth Circuit held that while *Krakauer* and *Bondurant* remained viable remedies, "judicial economy would be better served by a single proceeding in bankruptcy

Document      Page 10 of 11

court," and that "to the extent the debtor and the nonfiling spouse are indebted jointly, property owned as a tenant by the entireties may not be exempted from an individual debtor's bankruptcy estate under § 522(b)(2)(B) and the trustee may administer such property for the benefit of the joint creditors under § 363(h)." *Sumy*, 777 F.2d at 932. In short, *Sumy* allowed the chapter 7 trustee, as a matter of judicial economy, to accomplish directly inside bankruptcy what the joint creditors would otherwise be able to do outside bankruptcy under *Krakauer* and *Bondurant* — that is, subject the tenancy by the entireties real estate to the payment of the joint claims. Nothing in *Sumy* even remotely suggests that a chapter 7 trustee would be able to administer tenancy by the entireties property for the benefit of a creditor who would be unable to reach that property outside of bankruptcy. The controlling issue here is whether the debtors' interest in the tenancy by the entireties property "is exempt from process under applicable nonbankruptcy law." § 522(b)(2)(B), Bankruptcy Code. The answer is plainly no as to most joint creditors, but yes as to non-joint creditors and yes as to creditors holding joint claims solely by virtue of Section 55-37. Accordingly, the court concludes that a trustee could not administer the tenancy by the entireties property for U.Va.'s benefit had these debtors filed for relief under chapter 7.

## Conclusion

For the reasons stated, the court concludes that U.Va.'s claim would not be entitled to payment in a chapter 7 case from the proceeds of the debtors' principal residence held as tenants by the entireties. Payment of its claim pro rata with other unsecured claims therefore does not contravene the requirement of § 1325(a)(4), Bankruptcy Code, that U.Va. receive at least as much under the plan as it would in a chapter 7 case. Neither the trustee nor U.Va.

assert that more than $12,500 would be available in a chapter 7 case for payment of general unsecured claims. As previously noted, the only objection to confirmation that is not mooted is the alleged failure to satisfy the liquidation test. No objection has been raised that the plan fails to satisfy any of the other confirmation requirements, including the good faith test and the disposable income test. § 1325(a)(3) and (b), Bankruptcy Code. For that reason, a separate order will be entered overruling the objection to confirmation and confirming the debtors' plan.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge


Copies to:

Robert R. Weed, Esquire
Law Offices of Robert Ross Weed
1420 Prince Street, Suite 200
Alexandria, VA  22314
Counsel for the debtors

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee

John T. Donelan, Esquire
Law Offices of John T. Donelan
125 South Royal Street
Alexandria, VA  22314
Counsel for University of Virginia Medical Center
   and the Rector and Visitors of the University of Virginia